■ In the Matter of Ronald D. Corwin et al., Appellants, v City of New York et al., Respondents. [36 NYS3d 118]—

Judgment, Supreme Court, New York County (Frank P. Nervo, J.), entered April 30, 2015, denying the petition for leave to amend the notice of claim pursuant to General Municipal Law § 50-e (6) or to serve a late notice of claim pursuant to General Municipal Law § 50-e (5), and dismissing the proceeding, reversed, on the facts, without costs, and the petition for leave to serve a late notice of claim granted. Appeal from order, same court and Justice, entered July 10, 2015, to the extent it denied petitioners' motion to renew, unanimously dismissed, without costs, as academic.

Petitioner Ronald Corwin was injured when the front wheel of the Citi Bike he was riding struck an unpainted concrete wheel stop placed at the entrance to the Citi Bike station located at East 56th Street near Madison Avenue, causing the bike to flip over. Petitioner was riding his bike through the station to avoid car traffic. Petitioners (petitioner's wife is proceeding derivatively) served a timely notice of claim against the City alleging, inter alia, that petitioner's injuries were a result of its "negligence, recklessness and carelessness" in maintaining the station, particularly in the placement of a wheel stop that was not visible. The notice of claim alleged injuries to petitioner's head. Petitioners commenced a federal diversity action in the Southern District of New York that set forth the same allegations as those in the notice of claim.

In its answer in the federal action, the City asserted an affirmative defense that petitioner's own culpable conduct contributed to his injuries, but it did not specify what that conduct was. However, during a status conference before the United States Magistrate Judge who was overseeing discovery in the federal action, the City clarified that the comparative fault defense was based on the fact that petitioner had failed to wear a helmet. Petitioners' counsel indicated in the conference that petitioners would seek leave to amend the notice of claim to include an allegation that the City had a duty to provide helmets. When the City's counsel responded that the City would oppose the amendment because it had no such duty, petitioners' counsel stated as follows: "The point is they can't have it both ways. They can't say we didn't have a helmet but we don't provide helmets because we know that our City bike share program is not going to work if we have a helmet law."

Petitioners then moved for leave to amend the federal complaint to add new allegations that the City was negligent in failing to provide helmets. They also sought to amend the complaint to add, as additional defendants, the private contractor that the City retained to implement the bike program; that entity's parent company, and a related entity that assisted in the design of the system. The Magistrate granted the motion. The City filed an amended answer that specifically cited as an affirmative defense that petitioner's failure to wear a helmet contributed to his injuries and damages.

Petitioners then commenced this proceeding seeking leave to amend their notice of claim to conform to the amended complaint in the federal action, and moved by order to show cause for leave to amend the notice of claim in accordance with the petition. They argued that they were entitled to the amendment under General Municipal Law § 50-e (6), which permits amendments to correct "a mistake, omission, irregularity or defect," because the amendments were all still grounded in negligence and, therefore, did not assert new theories of liability. They further argued that the City would not be prejudiced by the amendment. They additionally asserted that, even if the amended notice of claim contained impermissible new theories of liability, the court could still grant leave to serve a late notice of claim under General Municipal Law § 50-e (5), since there was no unreasonable delay in seeking amendment, the City had timely actual knowledge of the essential facts constituting the claims, and, as such, the delay in asserting the new theory of liability did not substantially prejudice the City in maintaining its defense on the merits.

The proposed amended notice appended to the motion repeated the allegations set forth in the amended federal complaint. Specifically, it alleged that the City was "negligent, grossly negligent and committed professional negligence and malpractice" by designing the station in a way that it failed to provide adequate clearance, or a bike lane, between the station and vehicular traffic such that it required him to traverse the roadway portion of the station, and placed an unmarked concrete wheel stop at the end of that roadway, creating a trap-like condition. In addition to the allegations contained in the original notice of claim, the amended notice alleged that the City was "negligent, grossly negligent and committed professional negligence and malpractice" in designing the bike share program in a way that the unmarked concrete wheel stops were used at Citi Bike stations, and also that wheel stops were inconsistently placed at certain Citi Bike stations and not oth-

ers. Further, it added a claim that the City negligently failed to provide helmets to Citi Bike users, despite being aware that bike-share programs in other cities provided helmet rental systems.

The City argued in opposition that leave to amend was not warranted under General Municipal Law § 50-e (6) because petitioners were asserting new theories of liability. It further argued that leave to serve a late notice of claim was not warranted under General Municipal Law § 50-e (5) because (1) it did not have knowledge of the essential facts constituting the new claims within 90 days of the incident or a reasonable time thereafter, (2) petitioners did not set forth a reasonable excuse for their lengthy delay in seeking leave to serve a late notice of claim, and (3) the delay would substantially prejudice the City's defense against the new claims. The City argued that the delayed amendments would deprive it of an opportunity to timely investigate the new claims and factual allegations. It further asserted that the individuals who had direct involvement with the implementation of the bike-share program were no longer employed by the City.

Supreme Court denied the motion. It held that the proposed amendment would introduce a new theory of liability and that the passage of 16 months between the accident and the application, coupled with the fact that discovery was under way, constituted prejudice to the City. It did not expressly address that part of the motion that sought leave to file a late, as opposed to an amended, notice of claim. Petitioners moved for leave to renew and reargue, based on documents provided by the City after disposition of the original motion. Such documents included, inter alia, the site plan for the subject Citi Bike station and a feasibility study of the bike-sharing program. Petitioners also pointed out that former city employees were actually available for discovery, that two of those former employees had in fact been served with nonparty deposition subpoenas in the federal action, and that the City had indicated that it would defend those employees during the depositions. They asserted that such new discovery showed that the City had the wherewithal to investigate all of the allegations contained in the proposed amended notice of claim, negating the City's argument that it would be prejudiced by an inability to investigate the new claim. In opposition, the City argued that the motion to renew was untimely and that, in any event, the availability of the employees did not change the prejudice analysis because it lacked control over them. The court denied the motion for leave to renew and reargue.

General Municipal Law § 50-e (6) provides as follows: "Mistake, omission, irregularity or defect. At any time after the service of a notice of claim and at any stage of an action or special proceeding to which the provisions of this section are applicable, a mistake, omission, irregularity or defect made in good faith in the notice of claim required to be served by this section, not pertaining to the manner or time of service thereof, may be corrected, supplied or disregarded, as the case may be, in the discretion of the court, provided it shall appear that the other party was not prejudiced thereby." The statute "authorizes the correction of good faith, nonprejudicial, technical defects or omissions, not substantive changes in the theory of liability" (*Van Buren v New York City Tr. Auth.*, 95 AD3d 604, 604 [1st Dept 2012] [internal quotation marks omitted]). As such, amendments that create new theories of liability do not fall within the purview of General Municipal Law § 50-e (6) (*see Fleming v City of New York*, 89 AD3d 405 [1st Dept 2011]; *White v New York City Hous. Auth.*, 288 AD2d 150 [1st Dept 2001]).

Petitioners argue that the proposed amended notice of claim complies with General Municipal Law § 50-e (6) because the allegations of negligent design of the bike station merely expound on the allegations concerning the City's failure to safely protect riders from traffic, the City's improper placement of the wheel stop, and the City's negligent maintenance of the wheel stop without highly visible warning paint. They further assert that the allegations of failure to provide a helmet merely build on the original notice's claim of negligence.

The City counters that, while the original notice of claim was limited to allegations of negligent placement of the wheel stop at the station at the time of the accident, the amended notice of claim seeks to enlarge the scope of the City's alleged negligence to include the design of the infrastructure of the entire bike-share program. It further asserts that, contrary to petitioner's contention that he was merely expounding on the initial allegations of common-law negligence based on the placement and maintenance of the wheel stop, the new allegations of negligent design, "professional negligence or malpractice," "gross negligence," and negligent failure to provide helmets all raise new theories of liability.

With respect to the defect that caused petitioner to fall from the bicycle, we agree with the City that the proposed amendments substantively change the initial theory of liability from one that focuses on the camouflaged wheel stop to one that more broadly alleges that the City failed to design the station in a manner that provided adequate clearance between the sta-

tion and vehicular traffic. Further, the allegation that the City negligently failed to provide helmets went beyond mere amplification of the original notice of claim (*see Monmasterio v New York City Hous. Auth.*, 39 AD3d 354, 356 [1st Dept 2007]; *Lopez v New York City Hous. Auth.*, 16 AD3d 164, 165 [2005]). Since the new notice of claim does not present material authorized by section 50-e (6), the issue of whether the City would be prejudiced by the proposed amendment is irrelevant.

Petitioners argue that, even if General Municipal Law § 50-e (6) does not permit amendment of their notice of claim, General Municipal Law § 50-e (5) does. That section provides as follows: "Upon application, the court, in its discretion, may extend the time to serve a notice of claim . . . . In determining whether to grant the extension, the court shall consider, in particular, whether the public corporation . . . acquired actual knowledge of the essential facts constituting the claim within the time specified in subdivision one of this section or within a reasonable time thereafter. The court shall also consider all other relevant facts and circumstances, including . . . whether the delay in serving the notice of claim substantially prejudiced the public corporation in maintaining its defense on the merits."

In determining whether to grant leave to file a late notice of claim, key factors to be considered are " 'whether the movant demonstrated a reasonable excuse for the failure to serve the notice of claim within the statutory time frame, whether the municipality acquired actual notice of the essential facts of the claim within 90 days after the claim arose or a reasonable time thereafter, and whether the delay would substantially prejudice the municipality in its defense' " (*Velazquez v City of N.Y. Health & Hosps. Corp. [Jacobi Med. Ctr.]*, 69 AD3d 441, 442 [1st Dept 2010], *lv denied* 15 NY3d 711 [2010], quoting *Matter of Dubowy v City of New York*, 305 AD2d 320, 321 [1st Dept 2003]). The presence or absence of any one factor is not determinative (*Velazquez*, 69 AD3d at 442). However, courts have noted that the "most important factor" is whether the municipality "acquired actual knowledge of the essential facts constituting the claim within the time specified" (*Padilla v Department of Educ. of the City of N.Y.*, 90 AD3d 458, 459 [1st Dept 2011] [internal quotation marks omitted]). The statute is remedial in nature and should be liberally construed (*see Matter of Schiffman v City of New York*, 19 AD3d 206, 207 [1st Dept 2005]).

Here, to the extent that the allegations concerning the design of the station differ between the original notice of claim and

the proposed amended notice of claim, the City unquestionably had actual notice of the claims in the latter document, based on the original notice of claim. Further, it was not prejudiced by petitioner's amplification of the claims in the proposed amended notice, since the alleged defect was not transitory in nature (*see Fredrickson v New York City Hous. Auth.*, 87 AD3d 425 [1st Dept 2011]). Petitioner has established that the City was also in possession of relevant documents concerning the implementation of the system, and that it did have access to former employees with relevant knowledge of the facts at issue (*see Perez v New York City Health & Hosps. Corp.*, 81 AD3d 448, 449 [1st Dept 2011]).

In contrast to the design claim, we cannot say that, based on the original notice of claim, the City had actual knowledge of petitioners' claim concerning the City's failure to provide helmets. Nevertheless, it is not quite accurate to characterize petitioners' theory regarding petitioner's lack of a helmet as, in the words of the dissent, a "new tort claim" that petitioners had to inform the City of during the 90 days following the accident. To the contrary, petitioners only raised the helmet issue in response to the City's decision to assert as an affirmative defense that petitioner's injuries would have been less severe had he worn one. We note that petitioner's failure to use a helmet is akin to a plaintiff's failure to use a seatbelt in a motor vehicle case. It is well settled that any such failure does not go to comparative liability but rather to how damages, if any, should be assessed (*see e.g. Davis v Turner*, 132 AD3d 603, 603 [1st Dept 2015]). Further, the City bears the burden of proving that some or all of petitioner's injuries would not have been received had he used a helmet (*see Spier v Barker*, 35 NY2d 444, 450 [1974]). Accordingly, petitioners had no reason to make a claim concerning the lack of helmets until the City raised the issue. Additionally, to borrow language used by petitioners' counsel at the conference before the U.S. Magistrate, the City "can't have it both ways." The City cannot claim to be prejudiced where it chose to inject a mitigation defense into the federal action, and petitioners are merely trying to ensure that their notice of claim supports their effort to rebut that defense (*see American Safety Cas. Ins. Co. v New York City School Constr. Auth.*, 33 AD3d 441 [1st Dept 2006] [no prejudice to the defendant in permitting the plaintiff to amend notice of claim to conform to evidence of damages where the defendant itself provided the plaintiff with the proper amount of the loss], *lv denied* 8 NY3d 804 [2007]). We recognize that prejudice is not the only, or even the most important, factor to consider in analyzing the applicability of General Municipal Law § 50-e (5)

(see *Padilla*, 90 AD3d at 459). However, in this unique circumstance, we find that it would be patently unfair if petitioners are unable to contest the City's affirmative defense that petitioner should have worn a helmet. In addition, the City, which commissioned the Citi Bike program, was at all times aware of the unavailability of helmets to customers of the program. Further, any claim of prejudice is tempered by the fact that, like with the design claim, the decision by the City not to make helmets available to riders should be reflected in documents maintained by the City and in the knowledge of witnesses within its control. Concur—Mazzarelli, J.P., Manzanet-Daniels and Kahn, JJ.

Andrias and Richter JJ., dissent in part in a memorandum by Andrias, J., as follows: I agree with the majority that the motion court properly denied petitioners' motion for leave to amend their notice of claim under General Municipal Law § 50-e (6). I also agree with the majority that petitioners should have been granted leave to file a late notice of claim pursuant to General Municipal Law § 50-e (6) to assert a claim based on the City's alleged negligence and professional negligence in the design of the infrastructure of the Citi Bike program and the incident site (the design claim). However, because I believe that petitioners should not be granted leave to file a late notice of claim to assert a claim based on the City's alleged negligent failure to provide helmets on a system-wide basis, through vending machines or otherwise (the helmet claim), I respectfully dissent in part.

On October 25, 2013, petitioner Ronald Corwin was injured when the front wheel of the Citi Bike he was riding allegedly struck an unpainted concrete wheel stop placed at a Citi Bike station, causing the bike to flip over. Petitioners served a notice of claim, dated December 23, 2013, alleging in part, that the City improperly installed the wheel stop at the accident location, where it was not necessary; forced Mr. Corwin into a position of danger; failed to make timely inspections; failed to highlight the existence of the wheel stop with proper warnings; caused and allowed hazards to exist which brought about the accident; and created a trap and nuisance on the roadway.

More than 30 days later, petitioners commenced a federal action based on the same allegations as those in the notice of claim. In its answer dated April 16, 2014, the City asserted a boilerplate affirmative defense seeking to bar or diminish plaintiffs' claims based on Mr. Corwin's culpable conduct. On July 16, 2014, Mr. Corwin was deposed and stated that he was not wearing a helmet at the time of the accident, even though

he is an avid cyclist who owned two helmets and had previously worn one of them while riding a Citi Bike.

Subsequently, petitioners amended the complaint in the federal action to assert, among other things, the design claim and the helmet claim. In its amended answer, the City raised an affirmative defense that Mr. Corwin's claims should be barred or diminished by his culpable conduct, including his failure to wear a helmet. Thereafter, petitioners commenced this proceeding seeking leave to amend their notice of claim to conform to the amended complaint in the federal action, thereby allowing them to assert the design claim and the helmet claim against the City.

As the majority finds, the motion court properly denied petitioners leave to amend the notice of claim under General Municipal Law § 50-e (6). Section 50-e (6) authorizes the amendment of a notice of claim for the correction of good faith, nonprejudicial, technical defects or omissions, not substantive changes in the theory of liability (*see Scott v City of New York*, 40 AD3d 408, 410 [1st Dept 2007]). Contrary to petitioners' contention that they are merely expounding on the initial allegations of common law negligence based on placement and maintenance of the wheel stop, the new allegations of negligent design, "professional negligence or malpractice," "gross negligence," and negligent failure to provide helmets all raise new theories of liability (*see Rodriguez v Board of Educ. of the City of N.Y.*, 107 AD3d 651 [1st Dept 2013]; *Van Buren v New York City Tr. Auth.*, 95 AD3d 604 [1st Dept 2012]). Indeed, at the status conference in the federal action referenced by the majority, petitioners' counsel acknowledged "the City's failure to provide helmets was not something that was included in the original notice of claim."

General Municipal Law § 50-e (5) confers upon a court, under certain statutorily permitted circumstances, the discretion to determine whether to permit the filing of a late notice of claim to include new theories of liability (*see Pierson v City of New York*, 56 NY2d 950, 954 [1982]; *Thomas v New York City Hous. Auth.*, 132 AD3d 432 [1st Dept 2015]). In determining whether leave should be granted pursuant to General Municipal Law § 50-e (5), "the key factors considered are 'whether the movant demonstrated a reasonable excuse for the failure to serve the notice of claim within the statutory time frame, whether the municipality acquired actual notice of the essential facts of the claim within 90 days after the claim arose or a reasonable time thereafter, and whether the delay would substantially prejudice the municipality in its defense.' " (*Velazquez v City of N.Y.*

*Health & Hosps. Corp. [Jacobi Med. Ctr.]*, 69 AD3d 441, 442 [1st Dept 2010], *lv denied* 15 NY3d 711 [2010], quoting *Matter of Dubowy v City of New York*, 305 AD2d 320, 321 [1st Dept 2003]). While the presence or absence of any one factor is not determinative (*Velazquez*, 69 AD3d at 442), this Court has stated that "[t]he most important factor that a court must consider . . . is whether [the City] . . . 'acquired actual knowledge of the essential facts constituting the claim within the time specified' " (*Padilla v Department of Educ. of the City of N.Y.*, 90 AD3d 458, 459 [1st Dept 2011], quoting General Municipal Law § 50-e [5]; *see also Matter of Whittaker v New York City Bd. of Educ.*, 71 AD3d 776, 778 [2d Dept 2010]).

Here, the request for leave was made 1 year and 87 days after the accident and petitioners did not establish a reasonable excuse for the delay. Accordingly, to prevail on their motion, it was incumbent on petitioners to demonstrate that there exists "some prior actual notice and the absence of prejudice—which would be relevant in condoning the lack of reasonable excuse" (*Harris v City of New York*, 297 AD2d 473, 474 [1st Dept 2002], *lv denied* 99 NY2d 503 [2002]).

Whether the municipal defendant received knowledge of the facts constituting the claim means "whether the public corporation or its attorney or its insurance carrier acquired actual knowledge of the essential facts constituting the claim within [90 days of its occurrence] or within a reasonable time thereafter" (General Municipal Law § 50-e [5]). Knowledge that an accident occurred is not, in and of itself, enough (*see Chattergoon v New York City Hous. Auth.*, 161 AD2d 141, 142 [1st Dept 1990], *appeal dismissed* 76 NY2d 875 [1990]). Rather, the municipal defendant must have knowledge of the essential facts that underlie the legal theory or theories upon which liability is predicated (*see Evans v New York City Hous. Auth.*, 176 AD2d 221, 221-222 [1st Dept 1991], *appeal dismissed* 79 NY2d 886 [1992], *lv denied* 79 NY2d 754 [1992]; *Bullard v City of New York*, 118 AD2d 447, 450-451 [1st Dept 1986]).

While the original notice of claim provided the City with timely actual notice or knowledge of the essential facts connecting the accident to the City's alleged negligence with respect to placement of the wheel stop, which is the basis for the design claim, it did not provide the City with actual notice or knowledge of the facts that underlie the legal theory that the City was negligent in failing to provide helmets on a system-wide basis, through vending machines or otherwise, which is the basis for the helmet claim. Significantly, the notice of claim did not inform the City that Mr. Corwin was not wear-

ing a helmet at the time of the accident and there is no indication that the City was on notice, prior to the expiration of the time to file a notice of claim, or within a reasonable time thereafter, that its failure to provide a helmet would result in a distinct theory of liability (*see Matter of Gonzalez v City of New York*, 127 AD3d 632, 633-634 [1st Dept 2015] [no actual knowledge where workers' compensation form, among other things, made no mention of petitioners' present claim that the railroad car had a bent edge and was not equipped with proper safety devices]; *Kim v City of New York*, 256 AD2d 83, 84 [1st Dept 1998] [knowledge that the petitioner was injured when instructed by a teacher to move a large piece of plywood, was not tantamount to notice of the petitioner's claim that the respondents "were negligent in not providing petitioner with the mechanical means to move the plywood and otherwise in their supervision of petitioner's activities"], *lv dismissed in part, denied in part* 93 NY2d 896 [1999]). Since petitioners did not show an excuse for their delay and the City did not have actual knowledge of the essential facts constituting the helmet claim, the motion court properly denied petitioners leave to serve a late notice of claim with regard to that claim.

Although the majority concedes that petitioners have not shown a reasonable excuse for their one-year-and-87-day delay in bringing the motion, and that the original notice of claim did not provide the City with actual notice, it nevertheless grants petitioners leave to file a late notice of claim pursuant to General Municipal Law § 50-e (5) with respect to the helmet claim. The majority bases its determination on its belief that the City has not been substantially prejudiced because petitioners had no reason to make a claim concerning the lack of helmets until the City injected its mitigation defense into the federal action, and petitioners are merely trying to ensure that their notice of claim supports their effort to rebut that defense. Thus, the majority finds that "it would be patently unfair if petitioners are unable to contest the City's affirmative defense that [Mr. Corwin] should have worn a helmet."

However, despite what the majority perceives as unfairness, this Court is constrained to follow the General Municipal Law and case law. Because petitioners have not demonstrated a reasonable excuse for the delay and the City did not have actual notice of the facts constituting the helmet claim, "which heavily militate against granting the petition," the motion court did not improvidently exercise its discretion in denying petitioners leave to file a late notice of claim asserting a new tort claim based on the City's alleged negligent failure to

provide helmets on a system-wide basis (*Matter of Gonzalez v City of New York*, 127 AD3d at 634; *see also Matter of Peterson v New York City Dept. of Envtl. Protection*, 66 AD3d 1027, 1030 [2d Dept 2009] ["While the remaining respondents failed to demonstrate how the passage of time hampered their ability to investigate the alleged roadway defect, or interview witnesses or employees, and did not show substantial prejudice in their ability to defend this proceeding, the Supreme Court nonetheless properly, in effect, denied the petition insofar as asserted against them due to the lack of timely actual knowledge of the facts constituting the claim and the petitioner's lack of a reasonable excuse for the delay in bringing the proceeding"]). Indeed, in *Gonzalez*, this Court held that where the petitioner does not establish a reasonable excuse for the delay and the City does not have actual knowledge of the essential facts underlying the claim, "we need not address the final criterion to be considered in assessing a late notice of claim—whether respondents have been substantially prejudiced by the delay" (127 AD3d at 634; *see also Hebbard v Carpenter*, 37 AD3d 538, 541 [2d Dept 2007]).

Nor does the fact that the City asserted an affirmative defense based on Mr. Corwin's failure to wear a helmet constitute a "unique" circumstance that warrants granting petitioners leave to assert the helmet claim. To succeed on its mitigation defense, the City bears the burden of proving that Mr. Corwin's conduct in failing to wear a helmet was culpable because he acted unreasonably under the circumstances. Even without the granting of leave to allow plaintiff to assert the helmet claim as a new theory of liability, petitioners will be free to argue that Mr. Corwin's conduct was not unreasonable under the circumstances and that he did not breach a duty of care because adults are not required to wear helmets while riding bicycles in New York City and the Citi Bike program does not provide helmets.

However, with respect to the design claim, the City had actual notice or knowledge of the essential facts of the claim within 90 days after the claim arose or a reasonable time thereafter and no substantial prejudice has been shown. Consequently, the majority is correct that it was an improvident exercise of discretion to deny the City's motion for leave to serve a late notice to raise the design claim.

Accordingly, I would modify the judgment on appeal to the extent of granting the petition for leave to serve a late notice of claim asserting the design claim but not the helmet claim.