| **E.D.O. v City of New York** |
| :---: |
| 2025 NY Slip Op 30441(U) |
| February 4, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 162085/2024 |
| Judge: Hasa A. Kingo |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:** **HON. HASA A. KINGO** | **PART** **05M** |
| *Justice* | |

-------------------------------------------------------------------------------X

E. D. O.,

                           Petitioner,

                         - v -

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF EDUCATION, JOHN DOE, JOHN DOE,
JOHN DOE

                           Respondent.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 162085/2024 |
| **MOTION DATE** | N/A |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24

were read on this motion for                           LEAVE TO FILE             .

      Petitioner, E.D.O ("Petitioner")., an infant, by his mother and natural guardian, Yokaira Vasquez, moves for leave to file a late notice of claim pursuant to General Municipal Law ("GML") § 50-e. Petitioner asserts that due to infancy, the severity and progressive nature of his injury, and the actual knowledge of the claim by Respondents, the delay in filing should be excused and the application granted *nunc pro tunc*. Respondents, The City of New York and the New York City Department of Education (collectively, "City"), oppose the motion, arguing that Petitioner has failed to offer a reasonable excuse for the delay, has not established that Respondents had actual knowledge of the essential facts constituting the claim, and has failed to demonstrate that Respondents will not be prejudiced by the delay.

## PROCEDURAL HISTORY

      The incident giving rise to this matter occurred on or about September 25, 2023, when Petitioner, then a student participating in a school-based basketball program, sustained a serious injury to his left hip. Initially treated as a minor injury, his condition progressively worsened, culminating in a diagnosis of a slipped capital femoral epiphysis requiring surgical intervention. Petitioner underwent surgery at Columbia-Presbyterian Hospital on January 19, 2024, and has remained non-weight-bearing and homebound since that time.

      Petitioner's mother, Yokaira Vasquez, engaged in ongoing communications with school officials, including Assistant Principal Leonardo Blackman and a school dean, regarding Petitioner's condition and educational accommodations. In May 2024, she submitted a written statement detailing the injury and its effects on her son, which was later transmitted via fax to the Department of Education.

**162085/2024   D. O., E. vs. THE CITY OF NEW YORK ET AL**
**Motion No.  001**
                                                **Page 1 of 8**

1 of 8

[* 1]

Petitioner commenced this proceeding by Order to Show Cause on December 17, 2024, seeking leave to file a late notice of claim, arguing that Respondents had actual knowledge of the claim and would not be prejudiced by the delay.

## ARGUMENTS

Petitioner contends that the delay in filing should be excused due to infancy and the ongoing medical complications from the injury. Petitioner argues that Respondents had actual knowledge of the incident and the resulting injury due to the involvement of school staff, including Assistant Principal Blackman, in treating the initial injury, observing Petitioner's deteriorating condition, and discussing educational accommodations with his mother. Petitioner relies on *Matter of Newcomb v. Middle Country Cent. Sch. Dist.*, 28 NY3d 455 (2016), asserting that the burden is on the public corporation to demonstrate substantial prejudice and that Respondents have failed to do so.

Respondents oppose the application, asserting that Petitioner's claim is 359 days late and that ignorance of the law does not constitute a reasonable excuse. Citing *Matter of Martin (City of New York)*, 100 AD2d 879 (2d Dept 1984), Respondents argue that Petitioner has not demonstrated actual knowledge of the essential facts constituting the claim within the statutory period. Further, Respondents contend that the delay has prejudiced their ability to investigate and defend against the claim.

## DISCUSSION

Pursuant to General Municipal Law ("GML") § 50-i, no action sounding in tort may be commenced against a municipality unless a notice of claim was served upon it within ninety (90) days after the subject claim arose (General Municipal Law §§ 50-i [a], 50[e]). "The purpose of the notice of claim is to alert the municipality to the existence of the claim so that it can promptly investigate and preserve any relevant evidence before the passage of time renders such evidence unavailable or lessens its probative value" (*Jaime v City of New York*, 41 NY3d 531, 539 [2024]). As such, the notice of claim must state "the time when, the place where and the manner in which the claim arose" (General Municipal Law § 50-e[2]). The notice of claim "was not meant to be used as a sword to cut down honest claims, but merely as a shield to protect municipalities against spurious ones" (*Goodwin v New York City Hous. Auth.*, 42 AD3d 63, 66 [1st Dept 2007]). Because of its remedial nature, the statute must be liberally construed (*see Camacho v City of New York*, 187 AD2d 262 [1st Dept 1992]) and "should not operate as a device to frustrate the rights of individuals with legitimate claims" (*Matter of Porcaro v City of New York*, 20 AD3d 357 [1st Dept 2005]).

The court, in its discretion, may extend the time to serve a late notice (General Municipal Law § 50-e[5]). "In determining whether to grant or deny leave to serve a late notice of claim, the court must consider 'in particular' whether the municipality acquired actual knowledge of the essential facts constituting the claim within [ninety days of the claim's accrual] or within a reasonable time thereafter" (*Jaime*, 41 NY3d at 540, *supra*). "Courts are to place 'great weight' on this factor [and] the party seeking leave has the burden of establishing [actual knowledge] through the submission of nonspeculative evidence" (*id.*). "Generally, knowledge of essential facts as to

**162085/2024   D. O., E. vs. THE CITY OF NEW YORK ET AL**                                    **Page 2 of 8**
**Motion No.  001**

2 of 8

[* 2]

time and place by an actor in a position to investigate will suffice" (*id.*). Other factors to be considered include the reasonableness of the excuse offered for the delay in filing and whether the municipality would be substantially prejudiced because the claimant did not file during the statutory period (*Corwin v City of New York*, 141 AD3d 484, 489 [1st Dept 2016]).

## I.        Actual Knowledge

Petitioner has demonstrated that Respondents had actual knowledge of the essential facts underlying the claim. Assistant Principal Blackman was present at the time of the injury, observed Petitioner's ongoing struggles with mobility, and engaged in discussions regarding remote learning accommodations. His involvement is of paramount importance. Unlike cases in which a New York City Police Department officer makes a routine arrest and a petitioner attempts to impute actual knowledge to the City, in this instance Assistant Principal Blackman, who also served as a coach, personally observed Petitioner's injury. As a high-ranking official in the school—along with the dean—he then actively communicated with Petitioner's mother and was responsible for requiring Petitioner and other participants in the basketball program to wear weighted vests that may have contributed to the injury. As Petitioner's counsel emphasized during oral argument, Respondents' actual knowledge derives not only from witnessing the injurious event but also from being aware that the instrumentality responsible—namely, the use of weighted vests in contravention of applicable rules and regulations—was being employed.

Then, approximately four months after the incident, when Petitioner underwent surgery, Assistant Principal Blackman and the school dean were in regular correspondence with Petitioner's mother and became aware of the increased severity of Petitioner's injuries resulting from the September 25, 2023 incident. Petitioner's mother left numerous voicemails with the school, and her interactions with Assistant Principal Blackman and the school dean culminated in a meeting on May 13, 2024, during which it is alleged that extensive discussions about Petitioner's injuries took place. The significance of those conversations is underscored by Petitioner's mother stating that, following the meeting, she was instructed to fax official documentation of the incident to the Department of Education—a request that Petitioner's counsel noted at oral argument is unprecedented in such circumstances. Although this correspondence was not received until September 2024—a delay that Petitioner's counsel attributed convincingly to the summer break following the May 2024 meeting—it nonetheless served as tangible evidence that the school was duly notified and fully aware of the serious and ongoing nature of Petitioner's injuries stemming from the September 25, 2023 incident. This direct involvement distinguishes the present case from *Matter of Gray v. City of New York*, 211 AD3d 577 (1st Dept 2022), where the petitioner failed to offer records demonstrating actual notice. Given these circumstances, Respondents had timely knowledge of the claim.

The principle of actual knowledge is a pivotal element in determining whether a late notice of claim may be excused under GML § 50-e(5). As established in *Jaime v City of New York*, 41 NY3d 531 (2024), the purpose of the notice of claim is not merely a procedural formality, but rather a critical safeguard to ensure that municipalities are alerted to potential claims so that they can promptly investigate and preserve evidence while it remains fresh. In *Jaime*, the Court emphasized that the notice must convey clear and specific information regarding "the time when,

**162085/2024   D. O., E. vs. THE CITY OF NEW YORK ET AL**                                    **Page 3 of 8**
**Motion No.  001**

3 of 8

[* 3]

the place where and the manner in which the claim arose," thus enabling the municipality to mount an effective defense and secure pertinent evidence.

In the present case, the incident occurred on September 25, 2023, and accordingly, the statutory period for filing the notice of claim expired on December 24, 2023. However, Petitioner did not serve any notice until December 17, 2024—nearly one year after the statutory deadline and approximately one year and two months after the incident. This delay is particularly significant when viewed in light of the *Jaime* decision, which underscores that the municipality must be given prompt notice of the essential facts to avoid the degradation of evidence and to prevent any undue prejudice to its investigatory efforts.

Despite the clear lapse in time, Petitioner contends that Respondents had actual knowledge of the essential facts of the claim long before the formal notice was eventually filed. As stated, Assistant Principal Blackman was present at the scene on September 25, 2023, and witnessed the events that led to the injury. Notably, he observed the immediate effects of the incident, including Petitioner's difficulty with mobility, and he provided initial treatment instructions. Moreover, subsequent communications—both verbal and in writing—between Petitioner's mother and school officials, including a documented faxed statement transmitted in September 2024, further indicate that the essential facts of the incident were known to those in a position to act on behalf of the municipality.

The *Jaime* decision instructs that actual knowledge does not merely consist of being aware that an incident occurred; it requires that the municipality be made aware of the specific facts that form the basis of the claim. Here, the evidence demonstrates that Respondents had access to detailed accounts of the incident—such as the specific nature of the injury (a slipped capital femoral epiphysis), the fact that Petitioner was injured while participating in a school-sanctioned basketball program, and the ensuing deterioration in his condition. These facts were clearly communicated by school personnel and through documented interactions with Petitioner's mother, thereby satisfying the requirement that the municipality was not only aware of the occurrence but had actual knowledge of the claim's essential elements.

While the delay in filing is undeniable, the pivotal question under GML § 50-e(5) is whether the municipality's ability to investigate the claim was materially impaired by the late notice. In this regard, *Jaime*'s proposition that the purpose of the notice is to protect the municipality's capacity to gather evidence is instructive. Given that key school officials, including Assistant Principal Blackman, were actively involved and provided firsthand accounts of the incident, it is apparent that Respondents had sufficient actual knowledge of the claim's essential facts long before December 17, 2024. Thus, although the formal notice was delayed, the municipality was, in effect, on notice of the claim nearly from its inception, thereby mitigating any argument that the late filing prejudiced the municipality's ability to investigate or defend against the claim.

In summary, the comprehensive record indicates that despite the delay in serving a formal notice—occurring nearly one year after the statutory deadline—the municipality had actual knowledge of the essential facts of the claim as required by *Jaime* and related precedent. The involvement of key school officials, direct observations of the incident, and subsequent

**162085/2024   D. O., E. vs. THE CITY OF NEW YORK ET AL**
**Motion No.  001**

**Page 4 of 8**

4 of 8

communications collectively satisfy the standard that actual knowledge was obtained by Respondents within a reasonable time after the incident.

## II.      Reasonable Excuse

A central tenet in evaluating whether a late notice of claim should be permitted under GML § 50-e(5) is whether the delay was the result of a reasonable excuse. The statute's remedial purpose—ensuring that municipalities have prompt notice to investigate claims—must be balanced against the need to protect the rights of individuals who have legitimate causes of action. In this context, the circumstances surrounding the present case provide a compelling basis for excusing the delay.

Petitioner, being an infant, naturally faces significant challenges that can impede timely action. As a minor, Petitioner's ability to independently comprehend and navigate complex legal requirements is inherently limited. The law acknowledges such limitations by tolling the filing period for minors, as recognized under General Municipal Law § 50-i and CPLR § 208. Moreover, the injury sustained by Petitioner—a severe, progressive injury that culminated in a diagnosis of a slipped capital femoral epiphysis—rendered him physically incapacitated. His subsequent medical treatment, including surgery at Columbia-Presbyterian Hospital and prolonged non–weight-bearing status, significantly interfered with his ability to pursue timely notice filing. Similarly, as is often the case in medical malpractice matters, the progressive nature of Petitioner's injuries— which were initially managed conservatively due to his infancy—underscores that his youth justifies excusing the late filing. Courts have recognized that when a claimant is physically incapacitated, the statutory deadlines may be excused or extended, as the claimant is unjustly burdened by circumstances beyond their control. Indeed, Petitioner's infancy is a compelling factor that courts have consistently recognized as a justification for granting leave to file a late notice of claim (*see Matter of Dutra v City of New York*, 224 AD3d 682 [2d Dept 2022]). Additionally, Petitioner's progressively worsening condition and the need for extensive medical treatment support the reasonableness of the delay.

Another factor that contributes to the reasonable excuse for the delay is the miscommunication by school officials regarding the proper procedure to assert a claim. Petitioner's mother, acting on behalf of her injured child, was allegedly advised by school personnel—including Assistant Principal Blackman and the school's dean—to document the incident via a written statement and to fax the information to the Department of Education. These directives, while intended to facilitate the reporting process, led Petitioner's representatives to reasonably believe that such communications would suffice as notice of claim. As elucidated in *Goodwin*, 42 AD3d 63, *supra*, the notice of claim is designed as a protective mechanism rather than a tactical instrument to thwart valid claims. And while ignorance of the law does not, in itself, excuse a late filing, in this instance it provides essential context for understanding the reasons behind Petitioner's delay. Accordingly, reliance on the instructions provided by officials who are in a position to advise on procedural matters may be seen as a reasonable excuse for not filing a formal notice within the 90-day statutory period.

In addition, the evolving nature of Petitioner's injury further complicated the timely filing of the notice of claim. Initially perceived as minor, the injury progressively worsened over time,

**162085/2024   D. O., E. vs. THE CITY OF NEW YORK ET AL**                    **Page 5 of 8**
**Motion No.  001**

5 of 8

with Petitioner's condition deteriorating to the point where it necessitated surgical intervention. This progression not only delayed the realization of the full extent of the harm suffered but also disrupted the normal course of action regarding legal filings. The extraordinary circumstances—wherein a child's health was in serious jeopardy and his future well-being was at stake—justify a delay that, under ordinary circumstances, would not be tolerated. The Appellate Division, First Department, in *Matter of Porcaro v City of New York*, 20 AD3d 357 (1st Dept 2005), has made clear that the statutory requirements must not be applied in a manner that frustrates the rights of individuals with legitimate claims. In this light, the delay is seen not as a tactical maneuver, but as a consequence of unforeseen medical complications and a reasonable reliance on the advice received.

Finally, an important aspect of establishing a reasonable excuse for delay under GML § 50-e(5) is demonstrating that the municipality would not be substantially prejudiced by the late filing. As discussed in the analysis of actual knowledge, Respondents had been apprised of the essential facts from the inception of the incident. The extensive communications with school officials and the documented evidence of the injury's progression indicate that the municipality had ample opportunity to investigate the claim. The delay, therefore, did not undermine the municipality's ability to defend itself or to access crucial evidence, particularly given that key witnesses and records remained available. As held in *Corwin v City of New York*, 141 AD3d 484 (1st Dept 2016), the mere passage of time does not automatically equate to prejudice, especially when the municipality was on actual notice of the claim's essential facts.

Taken together, the factors of Petitioner's infancy, his severe physical incapacitation due to a progressively worsening injury, reliance on misdirected official guidance, and the absence of demonstrable prejudice to Respondents, collectively constitute a reasonable excuse for the delay in filing the notice of claim. The law is clear that such statutory provisions should be liberally construed to avoid thwarting the rights of individuals with legitimate claims. Consequently, the court finds that Petitioner has presented a compelling, reasonable excuse for the delay in filing the notice of claim.

### III.    Prejudice

Under GML § 50-e(5), in addition to evaluating actual knowledge and the reasonableness of the delay, courts must consider whether the delay in filing the notice of claim has substantially prejudiced the municipality's ability to investigate or defend against the claim. The underlying policy rationale is to ensure that a municipality, when properly notified, can promptly preserve evidence and conduct a thorough investigation, thereby safeguarding its capacity to defend its actions. However, if a municipality had actual or constructive notice of the essential facts of the claim prior to the late filing, any potential prejudice must be carefully scrutinized and cannot be presumed solely on the basis of the passage of time.

As established in *Corwin*, 141 AD3d at 489, *supra*, and reaffirmed in subsequent decisions, once a claimant shows that there was at least constructive or actual notice of the essential facts, the burden shifts to the municipality to make a "particularized evidentiary showing" of how the delay has substantially prejudiced its ability to defend the claim. This means that Respondents must identify and provide specific evidence demonstrating that the late filing impaired their

**162085/2024   D. O., E. vs. THE CITY OF NEW YORK ET AL**                                                    **Page 6 of 8**
**Motion No.  001**

6 of 8

investigation, resulted in the loss of critical evidence, or otherwise hindered their defense on the merits.

In the present matter, while it is undisputed that the formal notice of claim was not served until December 17, 2024—nearly one year after the statutory deadline and approximately one year and two months after the incident on September 25, 2023—the record reflects that Respondents had actual knowledge of the essential facts well before the formal filing. Key school personnel, notably Assistant Principal Leonardo Blackman, were directly involved on the day of the incident and in subsequent interactions with Petitioner's mother. As a result, the municipality was aware that an incident had occurred, the nature of the injury was serious, and that ongoing communications regarding Petitioner's condition had taken place.

Given this actual notice, the Respondents had ample opportunity to begin preliminary investigations or at least take steps to preserve any relevant evidence. The fact that school officials maintained continuous contact with Petitioner's representatives—including the faxed statement in September 2024—demonstrates that evidence and witness testimony remained available and accessible. Thus, the purported delay in serving the formal notice did not result in the loss of evidence or a diminished ability to investigate the claim.

Respondents have advanced only general assertions that the late filing has prejudiced their ability to defend against the claim. They have not provided any specific, particularized evidence— such as demonstrable loss of records, the unavailability of key witnesses, or other material impairment of their investigatory capacity—that would establish that their defense has been significantly hampered. During oral argument, when the court requested specific evidence of prejudice beyond the delay, Respondents could offer nothing but a conclusory, generalized invocation of prejudice. They did not assert that any witnesses were no longer employed at the school, that records pertaining to the basketball program had been lost, that the weighted vests were no longer present on the premises, or that memories had faded. In fact, it was confirmed that both Assistant Principal Blackman and the school dean continue to serve in their respective roles as they did at the time of the incident. Therefore, no prejudice exists. As reiterated in *Jaime*, *supra*, and *Corwin*, *supra*, it is not sufficient to assert that delay causes prejudice; there must be a clear and demonstrable link between the delay and a material disadvantage in mounting a defense.

Moreover, the remedial purpose of the notice of claim statute is not to serve as a "sword" to cut down upon legitimate claims, but rather as a "shield" protecting municipalities against spurious ones. In this light, the potential for prejudice is minimized when a municipality is on constructive or actual notice of the claim from early in the process. In the present case, given that Respondents were aware of the incident and the subsequent deterioration in Petitioner's condition, the opportunity to investigate and preserve evidence was not substantially compromised by the formal delay.

In sum, Respondents have not met their burden of demonstrating that the delay in filing the notice of claim has resulted in substantial prejudice. The record shows that despite the formal notice being delayed until December 17, 2024, the municipality had effective actual knowledge of the essential facts early on. Respondents' reliance on general claims of prejudice is insufficient without a particularized evidentiary showing of tangible harm to their investigatory or defense

**162085/2024   D. O., E. vs. THE CITY OF NEW YORK ET AL**
**Motion No.  001**

**Page 7 of 8**

7 of 8

capabilities. Accordingly, the court concludes that the alleged prejudice is speculative and fails to justify denying the late notice of claim.

Based on the foregoing, the court finds that Petitioner has met the criteria under GML § 50-e(5) for leave to file a late notice of claim. Petitioner's infancy, the serious nature of the injury, and the documented involvement of school officials provide ample justification for granting the application. Respondents have failed to demonstrate substantial prejudice.

Accordingly, it is hereby

ORDERED and ADJUDED that Petitioner's application for leave to file and serve a late notice of claim is GRANTED; and it is further

ORDERED and ADJUDGED that the notice of claim in the form annexed to the moving papers as Exhibit C (NYSCEF Doc. 9), is deemed timely filed and served, *nunc pro tunc*; and it is further

ORDERED that Petitioner shall proceed with the contemporaneously filed action under a different index number arising from this notice of claim.

This constitutes the decision, order, and judgment of the court.

| **2/4/2025** | | | | |
| --- | --- | --- | --- | --- |
| **DATE** | | | **HASA A. KINGO, J.S.C.** | |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- |
| | X | GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**162085/2024   D. O., E. vs. THE CITY OF NEW YORK ET AL**
**Motion No.  001**

**Page 8 of 8**

8 of 8

[* 8]